**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

**ZURICH AMERICAN INSURANCE
COMPANY, individually and as subrogee of
RTC Properties, Inc.**
1400 American Lane,
Schaumburg, IL 60196

and

**STEADFAST INSURANCE COMPANY**
1400 American Lane,
Schaumburg, IL 60196

      v.

**PACIFIC INDEMNITY COMPANY**
Two Plaza East, Suite 1450
330 East Kilbourn Avenue
Milwaukee, WI 53202-3146

and

**CHUBB INSURANCE COMPANY
OF NEW JERSEY**
15 Mountain View Road
Warren, NJ 07059

      Defendants

CIVIL ACTION

NO. _____

**<u>COMPLAINT</u>**

AND NOW COMES the plaintiffs, Zurich American Insurance Company, individually and

as subrogee of RTC Properties, Inc., and Steadfast Insurance Company, by and through their

attorneys, Bodell Bove LLC, to file this Complaint for declaratory and equitable relief, and civil

damages, and in support thereof, sets forth and avers the following:

## **PREAMBLE**

This matter arises out of an underlying subrogation claim brought by several insurers to recover payments they allegedly made for damage to the property of their respective insureds arising out of Superstorm Sandy styled *HDI Gerling Industrie Versicherung AG, et al., v. Continental Terminals, Inc. and RTC Properties, Inc*., U.S.D.C. D.N.J. Civ. No. 2:14-cv-02571-CCC-MF (the "Underlying Litigation").  In the Underlying Litigation, these subrogating insurers claim that certain coffee and cocoa beans owned by their insureds and located in a warehouse leased and operated by Continental Terminals, Inc. ("Continental") were damaged as a result of the flooding which occurred on October 29, 2012.  Prior to the time of the alleged loss, Continental was under agreement with RTC Properties, Inc. ("RTC") to provide RTC with primary and non-contributing insurance coverage, inclusive of defense and indemnity, under certain commercial general liability and umbrella liability insurance policies issued by defendants Pacific Indemnity Company ("Pacific") and Chubb Insurance Company of New Jersey ("Chubb"), with respect to all claims for property damage to Continental's customer's property stored at the warehouse.  Despite these insuring obligations, Pacific and Chubb have wrongfully and without justification failed and refused to defend or indemnify RTC in the Underlying Litigation.

Plaintiff, Zurich American Insurance Company, individually and as the equitable and legal subrogee of its policyholder, RTC, and Steadfast Insurance Company, an excess insurer for RTC, now bring this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and various statutory, codified, and common laws of the United States of America and the State of New Jersey seeking, *inter alia*: (a) a declaration that Pacific and Chubb are obligated to defend and potentially indemnify RTC in connection with the Underlying Litigation on a primary and non-

contributing basis, and (b) to recover all expenses and costs incurred by Zurich American Insurance Company in connection with the defense of RTC in the Underlying Litigation.

## THE PARTIES

1.   Plaintiff, Zurich American Insurance Company ("Zurich"), is a New York corporation engaged in the insurance business with a statutory home office located at One Liberty Plaza, 165 Broadway, 32nd Floor, New York, New York 10006, and its principal place of business located at 1400 American Lane, Schaumburg, Illinois 60196.  Zurich is authorized to transact business and has transacted business in the State of New Jersey.  Zurich is a citizen of New York and Illinois.

2.   Plaintiff, Steadfast Insurance Company ("Steadfast"), is a Delaware corporation engaged in the insurance business with a statutory home office located at 32 Loockerman Square, Dover, Delaware 19904, and its principal place of business located at 1400 American Lane, Schaumburg, Illinois 60196. Steadfast operates as a qualified surplus lines insurer in the State of New Jersey.   Steadfast is a citizen of Delaware and Illinois.

3.   Defendant, Pacific Indemnity Company ("Pacific"), is a Wisconsin corporation engaged in the insurance business which regularly conducts insurance business in the State of New Jersey, with its statutory office located at Two Plaza East, Suite 1450, 330 East Kilbourn Avenue, Milwaukee, WI and its principal place of business located at 15 Mountain View Road Warren, NJ 07059.  Pacific is a citizen of Wisconsin and New Jersey.

4.   Defendant, Chubb Insurance Company of New Jersey ("Chubb"), is a New Jersey corporation engaged in the insurance business which regularly conducts insurance business

in the State of New Jersey, with its principal place of business located at 15 Mountain View Road Warren, NJ 07059.  Chubb is a citizen of New Jersey.

5.      Pacific and Chubb are affiliated companies which trade under the name "Chubb Group of Insurance Companies," 15 Mountain View Road, Warren, NJ 07059.

6.      Pacific and Chubb acted in concert with one another with respect to the wrongful denial of insurance coverage at issue in this matter.

7.      Pacific and Chubb, at all times relevant to the matters complained of herein, acted through their duly authorized agents, servants, and employees and/or their actual or ostensible agents, servants, and employees.

## JURISDICTION AND VENUE

8.      This court has original jurisdiction under 28 U.S.C. §1332, in that this is a civil action between citizens of different states in which the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9.      Venue is proper in the United States District Court for the District of New Jersey under 28 U.S.C. §1391, because, *inter alia*, a substantial part of the events or omissions giving rise to the claim, including the loss which is at issue in the Underlying Litigation, took place within this District, and each of the defendants reside in this District for purposes of venue under 28 U.S.C. §1391(c)(2).

## CONTINENTAL'S CONTRACTUAL OBLIGATIONS

10.     Continental Terminals, Inc. ("Continental") is a full-service warehousing firm engaged by multiple interests in the stripping of incoming containerized loads of bagged cocoa and

coffee beans, their storage, blending, and eventual distribution to customers and or processing plants.

11.    At times relevant to the matters complained of herein, and for a period of time prior thereto, Continental operated several warehouses, including Buildings 54 as well as 49 A-D,[1] located within the River Terminal Industrial Park, 77 South Hackensack Avenue, Kearny, NJ (the "River Terminal").

12.    On or about March 15, 2006, Continental entered into a lease agreement with RTC Properties, Inc. ("RTC") for the buildings and equipment known as Buildings 49A-D at the River Terminal, and subsequently entered into amendments to that lease agreement extending the term of its leasehold interest in the demised premises through April 30, 2013 (the "Building 49 Lease"). A true and correct copy of the Building 49 Lease is attached as Exhibit "A."

13.    On or about January 1, 2007, Continental entered into a lease agreement with RTC for the buildings and equipment known as Building 54 at the River Terminal, and subsequently entered into amendments to that lease agreement extending the term of the leasehold interest in the demised premises through December 31, 2013 (the "Building 54 Lease"). A true and correct copy of the Building 54 Lease is attached as Exhibit "B."

14.    The Building 49 Lease requires Continental (the "Lessee") to obtain and maintain in effect (a) public liability insurance, inclusive of contractual liability coverage, in an amount not less than $3,000,000, naming RTC (the "Lessor") as an "insured" on a primary and non-contributing basis, with respect to, *inter alia*, Continental's operations and any damage to

---

[1]Sometimes referred to as Buildings 149 A-D.

property occurring in, upon, adjacent to or connected with the leased premises, and (b) all-risk property and casualty coverage, also protecting RTC as an "insured," on a primary and non-contributing basis, with respect to all property or goods warehoused by Continental:

ARTICLE  TENTH
INSURANCE

...
SECTION 10.02.A. Lessee shall obtain and keep in full force and effect during the Term, at its own cost and expense, (a) public liability insurance (with a contractual liability endorsement covering the matters set forth in Article FIFTEENTH) having a combined single limit of not less than $3,000,000, protecting Lessor, the lessor under the Underlying Lease and Lessee as insureds (and naming each such person as an insured party) against any and all claims for personal injury, death or property damage occurring in, upon, adjacent to or connected with the Premises, the Facility, the railroad siding, the private roadway, or any part thereof; and (b) insurance (herein sometimes referred to as "Lessee's fire (casualty) insurance") against loss or damage by any and all risks and hazards to Lessee's Property (as such term is hereinafter defined) for the full insurable value thereof, protecting Lessor, the holder of the Superior Mortgage, the lessor under the Underlying Lease and lessee as insureds (and naming each such person as an insured party).  All such insurance to be obtained by Lessee described in clauses (a) and (b) of the preceding sentence shall be written as primary insurance not contributing with any coverage that Lessor may carry.  Whenever, in Lessor's judgment, good business practice indicate the need for additional insurance coverage or different types of insurance, Lessee shall, upon demand, obtain such insurance at its own expense.

*See* Building 49 Lease at Article 10, Section 10.02A.

15.     The Building 54 Lease similarly requires Continental (the "Lessee") to obtain and maintain in effect (a) commercial liability insurance, inclusive of contractual liability coverage, in an amount not less than $3,000,000, naming RTC (the "Lessor") as an "insured" on a primary and non-contributing basis, with respect to, *inter alia*, Continental's operations and any damage to property occurring in, upon, adjacent to or connected with the leased premises, and (b) all-risk property and casualty coverage, also protecting RTC as an insured, on a

primary and non-contributing basis, with respect to property or goods warehoused by

Continental:

ARTICLE TENTH
INSURANCE

...
SECTION 10.02.A.  Lessee shall obtain and keep in full force and effect during the
Term, at its own cost and expense: (a) comprehensive general liability insurance
(with a contractual liability endorsement covering the matters set forth in Article
FIFTEENTH) having a combined single limit of not less than $3,000,000, protecting
Lessor, its owners and affiliates, and each of their officers, shareholders, directors,
employees and agents (collectively the "Lessor Parties"), the lessor under the
Underlying Lease and Lessee as insureds (and naming each such person as an
insured party) against any and all claims for personal injury, death or property
damage occurring in, upon, adjacent to or connected with the Premises, the parking
lot, the Facility, the railroad siding, the private roadway, or any part thereof; and (b)
insurance (herein sometimes referred to as "Lessee's fire (casualty) insurance")
against loss or damage by any and all risks and hazards to Lessee's Property (as such
term is hereinafter defined) for the full insurable value thereof, protecting Lessor, the
Lessor Parties, the holder of the Superior Mortgage, the lessor under the Underlying
Lease and Lessee as insureds (and naming each such person as an insured party). All
such insurance to be obtained by Lessee described in clauses (a) and (b) of the
preceding sentence shall be written as primary insurance not contributing with any
coverage that Lessor may carry. Whenever, in Lessor's judgment, good business
practice indicates the need for additional insurance coverage or different types of
insurance, Lessee shall, upon demand, obtain such insurance at its own expense.

See Building 54 Lease at Article 10, Section 10.02A.

16.    The term "Lessee's Property," as referenced in the foregoing insurance procurement

requirements in both lease agreements is defined as:

"Lessee's Property" shall mean all articles of personal property (including goods
being warehoused or distributed by Lessee or any permitted subtenant of Lessee or
other permitted occupant of the Premises) and fixtures and other property, which
have been installed or affixed on, in or to, or brought into, the Premises, at the
expense of Lessee or any permitted subtenant of lessee or other permitted occupant
of the Premises and without any credit or allowance by Lessor, which are not
replacements of any property of Lessor (whether any such replacement is made at
Lessee's expense or otherwise), and which do not constitute alterations, changes,
additions or improvements to the Premises or any appurtenance thereto.

Building 49 Lease and Building 54 Lease at Article 31, Section 31.01(d).

17.     The required contractual liability coverage, as referenced in the foregoing insurance procurement requirements in both lease agreements, addresses coverage for Continental's defense and indemnity obligations, relative to Continental's operations and damage to property (including loss of property) occurring in, on or about the leased premises even if caused by the alleged negligence of Lessor or Lessor's agents:

ARTICLE FIFTEENTH
LESSEE TO INDEMNIFY LESSOR

SECTION 15.01.  Notwithstanding that joint or concurrent liability may be imposed upon Lessor by statute, ordinance, rule, regulation, order or court decision, and notwithstanding any insurance furnished by Lessee to Lessor pursuant hereto or otherwise, Lessee shall and does hereby indemnify and hold harmless Lessor, and Lessor's agents, from and against any and all loss, liability, fines, suits, claims, obligations, damages, penalties, demands and actions, and costs and reasonable expenses of any kind or nature (including architects' and attorneys' fees) due to or arising out of any of the following, except to the extent arising from Lessor's willful misconduct (a) any work or thing done in, on or about the Premises or any part thereof or any use, possession, occupation, condition, operation, maintenance or management of the Premises or the Facility or any part thereof, or any parking lot, sidewalk, curb, or space adjacent thereto or any railroad siding, sewers, or private roadway, by Lessee or anyone claiming through or under Lessee or the respective employees, agents, licensees, contractors, servants or subtenants of Lessee or any such person; (b) any act, omission or negligence on the part of Lessee or any person claiming through or under Lessee, or the respective employees, agents, licensees, invitees, contractors, servants or subtenants of Lessee or any such person; (c) any accident or injury to any person (including death) or damage to property (including loss of property) occurring in, on or about the Premises or the Facility or any part thereof, or any parking lot, sidewalk, curb, or space adjacent thereto, or any railroad siding or private roadway, even if due to the negligence of Lessor or Lessor's agents; or (d) any failure on the part of Lessee to perform or comply with any of the covenants, agreements, terms, provisions, conditions or limitations contained in this Lease on its part to be performed or complied with.  The provisions of this Section shall survive the expiration or termination of this Lease.  Any sums payable by Lessee to Lessor under this Section shall be due and payable on demand.

SECTION 15.02.  Lessor and Lessor's agents shall not be liable for any of the following, however caused, even if due to the negligence of Lessor or Lessor's agents (but nothing herein shall relieve Lessor from its willful misconduct): (a) any failure of water supply, gas or electrical current or of any utility, (b) any injury or

damage to person or property caused by or resulting from any cause whatsoever, including explosion, falling plaster, vermin, smoke, gasoline, oil, steam, gas, electricity, earthquake, subsidence of land, hurricane, tornado, flood, wind or similar storms or disturbances, or water, rain, ice or snow which may be upon, or leak or flow from any street, road, sewer, gas main or subsurface area, or from any part of the Building or Building Equipment, or leakage of gasoline, oil or other substances from pipes, pipelines, appliances, sewers or plumbing works in the Premises or at the Facility, or from any other place, or from the breaking of any electric wire or the breaking, bursting or leaking of water from any plumbing or sprinkler system, or any other pipe in or about the Premises or the Facility, (c) interference with light or other incorporeal hereditaments, any railroad siding, sewers or private roadway, (d) loss by theft or otherwise of Lessee's Property or the property of any person claiming through or under Lessee.  No property, other than such as might normally be brought upon or kept in the Premises as incident to the reasonable use of the Premises or the parking lot for the purposes herein permitted, will be brought upon or be kept in the Premises or the parking lot.  Lessor and Lessor's agents shall not be liable for any loss or damage to any of Lessee's Property nor for any interruption or loss of Lessee's business even if due to the negligence of Lessor or Lessor's agents.  Any employees of Lessor to whom any property shall be entrusted by or on behalf of Lessee shall be deemed to be acting as Lessee's agents with respect to such property and neither Lessor nor Lessor's agents shall be liable for any loss of or damage to any such property by theft or otherwise.

*Ibid.* at Article 15.

### THE PACIFIC AND CHUBB POLICIES

18.  In accordance with Continental's contractual obligations, Continental procured and maintained public liability insurance from Pacific and Chubb, and those insurers caused to be issued a Certificate of Insurance plainly evidencing the policies so procured, with limits of at least $6 Million, and clearly identifying RTC as an "additional insured" under those policies, on a primary and non-contributing basis with respect to any insurance maintained by RTC through Zurich and Steadfast.  A true and correct copy of the Certificate of Insurance is attached as Exhibit "C."

19.  The Pacific commercial liability insurance policy procured for the benefit of RTC is identified more specifically as Pacific Indemnity Company Policy No. 3586-56-44 WBO,

effective August 15, 2012 to August 15, 2013, with limits of $1,000,000 per occurrence (the "Pacific Policy"). The Pacific Policy identifies Continental is the first Named Insured, and includes RTC as a scheduled additional insured under an endorsement issued August 17, 2012 and effective August 15, 2012 applicable to the general liability coverage part of the policy. A true and correct copy of the Pacific Policy is attached as Exhibit "D."

20.  The Chubb commercial liability insurance policy procured for the benefit of RTC is identified more specifically as Chubb Insurance Company of New Jersey Excess and Umbrella Insurance Policy 7986-62-21, effective August 15, 2012 to August 15, 2013, with limits of $5,000,000 per occurrence (the "Chubb Policy"). The Chubb Policy identifies Continental as the first Named Insured, and includes RTC as an additional insured under both the excess follow form and umbrella liability coverage parts of the policy . A true and correct copy of the Chubb Policy is attached as Exhibit "E."

<u>THE ZURICH AND STEADFAST POLICIES</u>

21.  RTC is a scheduled Named Insured under Zurich American Insurance Company Policy No. GLO 9319613-00, effective October 15, 2011 through December 31, 2012, with limits of $1,000,000 per occurrence (the "Zurich Policy"). A true and correct copy of the Zurich Policy is attached as Exhibit "F."

22.  The Zurich Policy affords excess commercial general liability insurance coverage over other insurance in which RTC is endorsed as an additional insured for liability for damages arising out of the premises or operations or the products completed operations hazards. Zurich Policy at Commercial General Liability Coverage Form (CG 0001 (12/07)), Section IV. ¶4.b.(1)(b).

23.     RTC is a scheduled Named Insured under Steadfast Insurance Company Follow Form Excess Liability Policy No. SEO 4892140-01, effective November 2, 2011 through December 31, 2012, with limits of $5,000,000 per occurrence (the "Steadfast Excess Policy"). A true and correct copy of the Steadfast Excess Policy is attached as Exhibit "G."

24.     The Steadfast Excess Policy affords follow form excess liability coverage, subject to the policy's limits, over the Zurich Policy, and is excess to all other insurance available to RTC, including the Pacific and Chubb Policies. Steadfast Excess Policy at Follow Form Excess Liability Policy Occurrence Form (STF-UX-102-A CW (10/92)), Section VI.¶J.

## THE UNDERLYING LITIGATION

25.     On or about April 22, 2014, HDI Gerling Industrie Versicherung AG, XL Specialty Insurance Company, Underwriters Marine Services, Inc., and B.D.M. NV brought a subrogation action against Continental and RTC in an effort to recover sums these insurers allegedly paid to their respective policyholders arising out of alleged damage to coffee beans and cocoa handled by Continental and stored in buildings 49 and 54 of the River Terminal. That civil action is styled as, *HDI Gerling Industrie Versicherung AG, et al., v. Continental Terminals, Inc. and RTC Properties, Inc*., U.S.D.C. D.N.J. Civ. No. 2:14-cv-02571-CCC-MF (the "Underlying Litigation").

26.     The Complaint filed in the Subrogation Action was subsequently amended twice, and the subrogating insurers were ultimately identified as HDI Gerling Industrie Versicherung AG, XL Specialty Insurance Company, Axis Insurance Company, B.D.M. NV and, Ace European Group Ltd. (hereinafter collectively referred to as the "Subrogating Insurers") in the now

operative Second Amended Complaint. A true and correct copy of the Second Amended Complaint in the Underlying Litigation is attached as Exhibit "H."

27.     In the Underlying Litigation, the Subrogating Insurers allege that each of their respective policyholders are in the business of "buying, selling and distributing bagged coffee and cocoa," and that "Continental is in the business of storing and handling coffee, cocoa beans and other goods for hire," and has "specialized expertise in the storage and handling of coffee, coffee beans, cocoa beans and related products." Second Amended Compl. at ¶¶10-15.

28.     In the Underlying Litigation, the Subrogating Insurers allege that Continental was at all relevant times the lessee, operator and/or manager of coffee and cocoa storage warehouses located at 77 South Hackensack Avenue, Kearny, New Jersey near the convergence of the Hackensack River and the Passaic River including Building 54 and Building 49 (also known as Building 149) (hereinafter the 'Warehouse Facility')." *Id.* at ¶16.

29.     In the Underlying Litigation, the Subrogating Insurers also allege that RTC was the owner or landlord of the "Warehouse Facility," and in that capacity had some duty or legal obligation to ensure that the coffee and cocoa beans held by Continental on consignment remained safe while at the "Warehouse Facility." *Id.* at ¶17.

30.     In the Underlying Litigation, the Subrogating Insurers allege that their respective policyholders, identified as Rothfos Coffee, Transmar Cocoa, Serengeti Coffee, Touton Cocoa, and Mars Cocoa (collectively, "Underlying Subrogors"), delivered various shipments of bagged coffee and/or cocoa to Continental for handling and storage, and that Continental "received and accepted such coffee [and/or cocoa] in its 'Warehouse Facility' and agreed to,

-12-

in exchange for charges paid (or agreed to be paid), *inter alia*, properly and safely store and protect the coffee [and/or cocoa] in its 'Warehouse Facility' and to otherwise exercise reasonable care of the coffee [and/or cocoa], and to deliver such coffee [and/or cocoa] to [the Underlying Subrogor] and/or its designee in the same good order and condition as when received." *Id.* at ¶¶22, 23, 32, 33, 42, 43, 52, 53, 62, and 63.

31.    In the Underlying Litigation, the Subrogating Insurers allege Continental received and accepted this bagged coffee and cocoa in its "Warehouse Facility," yet failed to operate or maintain that "Warehouse Facility" in a manner so as to ensure that property's safety. *Id.* at ¶¶26, 36, 46, 56, and 66.

32.    In the Underlying Litigation, the Subrogating Insurers allege that the consigned coffee and cocoa sustained physical damage or loss as a result of flooding caused by Superstorm Sandy on October 29, 2012.  *Id.* at ¶¶24, 34, 44, 54, and 64.

33.    In the Underlying Litigation, the Subrogating Insurers claim that they paid to and for the benefit of the Underlying Subrogors sums in excess of $17 Million as a direct and proximate result of the physical damage to the coffee and cocoa.  *Id.* at ¶¶31, 41, 51, 61, and 71.

34.    In the Underlying Litigation, the Subrogating Insurers assert claims sounding in negligence against Continental, which they claim resulted in loss and damage to the coffee and cocoa, *id.* at ¶¶80-82, 99-101, 118-120, 137-139, and 156-158, and in premises liability against RTC, for that same property damage, *id.* at ¶¶88-90, 107-109, 126-128, 145-147, and 164-16[7].

-13-

**RTC'S TENDER OF THE UNDERLYING LITIGATION TO PACIFIC AND CHUBB AND THEIR THE WRONGFUL REFUSAL TO DEFEND AND POTENTIALLY INDEMNIFY RTC UNDER THE PACIFIC AND CHUBB POLICIES**

35.     On May 19, 2014, RTC tendered its defense in the Underlying Litigation to Continental, Pacific, and Chubb and demanded indemnification for all damages which may be assessed against it in that litigation.

36.     On October 14, 2014 Pacific and Chubb denied coverage to RTC under the Pacific and Chubb Policies on grounds that the coffee and cocoa were being held by, stored by, or in the custody of the insured.

37.     The coffee and cocoa beans, however, were not owned, held by, entrusted to, stored, or otherwise in the care, custody or control of RTC (another "insured" under the Pacific and Chubb Policies) at any time.

38.     As a result of the wrongful denial of the defense of RTC by Pacific and Chubb, and the breach of their respective insuring agreements, and presented with no other choice, Zurich was compelled to drop down from its excess position over the Pacific and Chubb Policies and defend RTC in the Underlying Litigation under reservation of rights.

39.     Additionally, since Pacific and Chubb have wrongfully refused to agree to indemnify RTC in the Underlying Litigation in the event of an adverse judgment or settlement of the property damage claims against RTC, Steadfast has been placed on notice of a potential indemnity obligation and has a direct and quantifiable interest in ensuring that, at a minimum, the $6,000,000 limits of the Pacific and Chubb Policies are exhausted on behalf of RTC relative to any adverse judgment or settlement in the Underlying Litigation before any conceivable insuring obligation would arise under the Steadfast Policy.

-14-

40.  As a direct result of Pacific's unlawful refusal to assume the defense of RTC in the Underlying Litigation, Zurich has incurred significant costs, expenses, and legal fees in connection with the defense of RTC in the Underlying Litigation.

41.  In the alternative as described *infra*, as a direct result of Chubb's unlawful refusal to assume the defense of RTC in the Underlying Litigation, Zurich has incurred significant costs, expenses, and legal fees in connection with the defense of RTC in the Underlying Litigation.

42.  The costs, expenses, and legal fees in connection with the defense of RTC in the Underlying Litigation exceed $75,000.00.

43.  Zurich is the real party in interest as regards to the costs, expenses, and legal fees it has and continues to incur in connection with the defense of RTC in the Underlying Litigation.

44.  An actual case and controversy has arisen with respect to the duties and obligations of Pacific and Chubb relative to the defense of RTC in the Underlying Litigation, as well as their indemnification obligations in favor of RTC in the event of an adverse judgment or settlement of the Underlying Litigation.

## COUNT I
## DECLARATORY RELIEF AGAINST PACIFIC
### (Duty to Defend and Potentially Indemnify RTC in the Underlying Litigation)

45.  Plaintiffs, Zurich American Insurance Company and Steadfast Insurance Company, incorporate by reference the foregoing allegations of this Complaint as if the same were set forth herein at length.

46.  The Pacific Policy provides primary commercial general liability insurance coverage which obligates Pacific to defend and indemnify any qualifying "insured" against a claim for "property damage," caused by an "occurrence," which takes place during the policy period:

**BODILY INJURY AND PROPERTY DAMAGE LIABILITY COVERAGE**

Subject to all of the terms and conditions of this insurance, we will pay damages that the **insured** becomes legally obligated to pay by reason of liability:

- imposed by law; or
- assumed in an **insured contract**;

for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.

This coverage applies only to such **bodily injury** or **property damage** that occurs during the policy period.
...

**INVESTIGATION, DEFENSE AND SETTLEMENTS**

Subject to all of the terms and conditions of this insurance, we will have the right and duty to defend the **insured** against a **suit**, even if such **suit** is false, fraudulent or groundless.  If such a **suit** is brought, we will pay reasonable attorney fees and necessary litigation expenses to defend:

- **the insured**; and

- if applicable, the indemnittee [sic] of the **insured**, provided the obligation to defend, or the cost of the defense of, such indemnittee [sic] has been assumed by such insured in an **insured contract**.
...
We have no duty to defend any person or organization against any **suit** seeking damages to which this insurance does not apply.  We may, at our discretion, investigate any occurrence or offense and settle any claim or **suit**.  Our duty to defend any person or organization ends when we have used up the applicable Limit Of Insurance.

Pacific Policy at Coverages and at Investigation, Defense and Settlements.

47.     The highlighted terms within this commercial general liability insuring agreement of the

Pacific Policy are defined, in relevant part, as follows:

**"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

-16-

**"Property damage"** means:

- Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

- Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it. ...

**"Suit"** means a civil proceeding in which damages, to which this insurance applies, are sought. ...

**"Insured contract"**:

A.   means:

      1.   a lease of premises;
      ...

*Id.* at Definitions.

48.   The Pacific Policy includes, as an "**insured**," lessors of premises, as follows:

WHO IS AN INSURED
...
Persons or organizations from whom you lease premises are insureds; but they are insureds only with respect to the ownership, maintenance or use of that particular part of such leased premises leased to you and only if you are contractually obligated to provide them with such insurance as is afforded by this contract.

However, no such person or organization is an insured with respect to any:

- damages arising out of their sole negligence;
- occurrence that occurs, or offense that is committed, after you cease to be a tenant in the premises; or
- structural alteration, new construction or demolition operations performed by or on behalf of them.

*Id.* at Who Is An Insured.

49.   The Pacific Policy also includes a scheduled insured primary non-contributing endorsement,

which affords primary and non-contributing insurance coverage to RTC per the following:

-17-

**OTHER INSURANCE – PRIMARY, NON-CONTRIBUTORY INSURANCE –
SCHEDULED PERSON OR ORGANIZATION**

If you are obligated, pursuant to a written contract or agreement, to provide the person or organization described in the Schedule (that is also included in the Who Is An Insured section of this contract) with primary insurance such as is afforded by this policy, then this insurance is primary and we will not seek contribution from insurance available to such person or organization.

Schedule
River Terminal Development Company/RTC Properties, Inc.
100 Central Avenue, Suite 630
Kearny, NJ 07032

*Id.* at Other Insurance – Primary, Non-contributory Insurance – Scheduled Person Or

Organization Endorsement (Form 80-02-2653 (Rev. 7-09)).

50.     The Pacific Policy expressly states that coverage is afforded in New Jersey for premises

liability and warehouse operations:

STATE: NEW JERSEY
COVERAGE NAME: PREM/OPS
CLASSIFICATION CODE NUMBER: 99938
CLASSIFICATION DESCRIPTION: WAREHOUSE – NOC
(THIS CLASSIFICATION INCLUDES PRODUCTS/COMPLETED
OPERATIONS)

*Id.* at Liability Coverage, Rating Information.

51.     The alleged failure to protect property from the flood occasioned by Superstorm Sandy, as

alleged in the Underlying Litigation, is an "occurrence" as defined by the Pacific Policy.

52.     The premises liability claims, predicated on negligence, and advanced against the RTC in

the Underlying Litigation arise out of the premises/operations hazard for a warehouse

located in the State of New Jersey.

53.    The damage and loss to the coffee and cocoa beans, as alleged in the Underlying Litigation, is "property damage" as defined by the Pacific Policy, which took place during the Pacific Policy's policy period.

54.    The claims advanced against RTC in the Underlying Litigation directly address damages because of "property damage" caused by an "occurrence," as those terms are defined under the Pacific Policy, which took place during the effective dates of the Pacific Policy, and implicate a risk (the premises/operations hazard) specifically underwritten by Pacific in the Pacific Policy.

55.    The Building 49 Lease and the Building 54 Lease each qualify as an "insured contract" as defined by the Pacific Policy.

56.    Under the terms of these "insured contracts," Continental is legally obligated to defend and indemnify RTC "from and against any and all loss, liability, fines, suits, claims, obligations, damages, penalties, demands and actions, and costs and reasonable expenses of any kind or nature (including architects' and attorneys' fees) due to or arising out of ... (c) any accident or injury to any person (including death) or damage to property (including loss of property) occurring in, on or about the Premises or the Facility or any part thereof ... even if due to the negligence of [RTC] or [RTC's] agents," and "notwithstanding that joint or concurrent liability may be imposed upon [RTC] by statute, ordinance, rule, regulation, order or court decision."  Building 54 Lease and Building 49 Lease at Article 15, Section 15.01.

57.    RTC is an indemnitee of Continental, whose obligation to defend RTC and pay all costs associated with the defense of RTC was expressly assumed by Continental in an insured contract.

58.   Under the terms of the Pacific Policy's insuring agreement, and consistent with the "Other Insurance – Primary, Non-contributory Insurance – Scheduled Person Or Organization" Endorsement, Pacific has a primary and non-contributing duty to defend RTC in the Underlying Litigation as an "insured" and as Continental's contractual indemnitee.

59.   Moreover, under the terms of the Pacific Policy's "Other Insurance – Primary, Non-contributory Insurance – Scheduled Person Or Organization" Endorsement, Pacific has expressly waived any right to seek contribution from any other insurance available to RTC, such as the Zurich Policy and Steadfast Excess Policy.

60.   The Zurich Policy includes an "other insurance" provision which further specifies that the insurance coverage afforded to RTC, the Named Insured ("you") under the Zurich Policy, is excess over any other primary insurance available to RTC which covers liability for damages arising out of premises or operations for which RTC has been endorsed as an additional insured:

Section IV.  Commercial General Liability Conditions
...
4.      Other Insurance

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

   a.      Primary Insurance

   This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

   b.      Excess Insurance

   (1)      This insurance is excess over:

    (a)    Any of the other insurance, whether primary, excess, contingent or on any other basis:

        (i)    That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

        (ii)    That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

        (iii)    That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

        (iv)    If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

    (b)    Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

Zurich Policy at Commercial General Liability Coverage form (CG 0001 (12/07 Ed.)), at Section IV.4.

61.    Consistent with the excess "other insurance" provisions of the Zurich Policy and the primary and non-contributing "other insurance" provision set forth in the Pacific Policy's "Other Insurance – Primary, Non-contributory Insurance – Scheduled Person Or Organization" Endorsement, the commercial general liability coverage available to RTC under the Zurich Policy is excess to and non-contributing with the primary and non-contributing insurance coverage afforded RTC under the Pacific Policy.

62.   The "other insurance" provision of the Steadfast Excess Policy specifically states:

Other Insurance

If other valid and collectible insurance with any other insurer is available to the insured covering an occurrence also covered hereunder, this insurance shall be excess of, and shall not contribute with, such other insurance. ...

Steadfast Excess Policy at Follow Form Excess Liability Policy Occurrence Form (STF-UX-102-A CW (10/92)), Section VI.¶J.

63.   Pursuant to the excess "other insurance" provision of the Steadfast Excess Policy and the primary and non-contributing "other insurance" provision set forth in the Pacific Policy's "Other Insurance – Primary, Non-contributory Insurance – Scheduled Person Or Organization" Endorsement, the follow form excess liability coverage available to RTC under the Steadfast Excess Policy is excess to and non-contributing with the primary and non-contributing insurance coverage afforded RTC under the Pacific Policy.

64.   Pacific's disclaimer of coverage for RTC in the Underlying Litigation was exclusively premised upon an exclusion for property held by "you":

DAMAGE TO VARIOUS PROPERTY OF OTHERS (CARE, CONTROL OR CUSTODY)

This insurance docs not apply to property damage to any:
...
• property held by you or on your behalf for sale or entrusted to you for safekeeping or storage;
...
This exclusion docs not apply to the liability for damages assumed in a sidetrack agreement.

Pacific Policy at Exclusions; October 14, 2014 Disclaimer, attached as Exhibit "I."

65.   The exclusion relied upon by Pacific contradicts the specific risk underwritten by the Pacific Policy; namely, general liability coverage for premises and operations for warehouses

located in New Jersey.  As such it inherently contradicts the declarations of coverage which are paramount in New Jersey in determining an insurer's coverage obligations.  *See e.g.*, *President v. Jenkins*, 180 N.J. 550, 565 (2004) ("our courts place particular emphasis on the declarations page when determining the reasonable expectations of the insured.") (collecting cases).

66.    Even assuming the inherent conflict were ignored, the Pacific Policy refers to property held by "you" or entrusted to "you" for safekeeping or storage, and the term "you," as Pacific plainly concedes in its disclaimer, refers only to the Named Insured – not RTC, a scheduled and endorsed additional insured.

67.    The Pacific Policy expressly states that each insured and each Named Insured are treated separately, except as to limits, as if each such insured or Named Insured were the only insured or Named Insured under the policy:

SEPARATION OF INSUREDS

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this insurance to the first Named Insured, this insurance applies:

- as if each named Insured were the only named insured; and

- separately to each insured against whom claim is made or suit is brought.

*Id*. at Conditions, Separation of Insureds.

68.    Thus, the exclusion does not apply to defeat the coverage available to RTC as an insured under the Pacific Policy because the property at issue, the coffee and cocoa beans, were not held by RTC or entrusted to RTC for safekeeping or storage.

-23-

69.     Moreover, the exclusion does not speak to (or explicitly preclude coverage for) Continental's contractual indemnitee, RTC, whose defense and liability has been expressly assumed by Continental under an "insured contract."

70.     Pacific's disclaimer is wrongful, improper, and without basis.

71.     Pacific asserted no other grounds for its disclaimer of coverage under the Pacific Policy and has waived or is otherwise estopped from doing so now.

72.     Pacific has a duty to defend RTC in the Underlying Litigation, and potentially indemnity RTC with respect to any adverse judgment or settlement of the Underlying Litigation on a primary and non-contributing basis under the Pacific Policy.

73.     All conditions precedent for the trigger of a primary and non-contributing defense obligation in favor of RTC under the Pacific Policy have been satisfied and/or waived by Pacific.

74.     As a result of Pacific's unlawful failure to assume the defense of RTC in the Underlying Litigation as required under the Pacific Policy, Zurich has been compelled to drop down from its excess position and provide a defense to RTC in the Underlying Litigation.

75.     There exists a substantial, *bona fide*, actual and justiciable dispute regarding the application and interpretation of the Pacific Policy and Pacific's insuring obligations in favor of RTC thereunder.  There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

        **WHEREFORE,** Zurich American Insurance Company and Steadfast Insurance Company respectfully request that this Honorable Court enter:

(a)     An Order declaring that Pacific Indemnity Company is obligated to defend RTC Properties, Inc. in the civil action styled *HDI Gerling Industrie Versicherung AG, et al., v. Continental Terminals, Inc. and RTC Properties, Inc.*, U.S.D.C. D.N.J. Civ. No. 2:14-cv-02571-CCC-MF

under Pacific Indemnity Company Policy No. 3586-56-44 WBO on a primary and non-contributing basis;

(b)     An Order declaring that the insurance coverage available to RTC Properties, Inc. under Zurich American Insurance Company Policy No. GLO 9319613-00 and Steadfast Insurance Company Policy No. SEO 4892140-01 is excess to and non-contributing with the commercial general liability insurance coverage afforded RTC Properties, Inc, under Pacific Indemnity Company Policy No. 3586-56-44 WBO, as regards to any further defense or indemnification obligation which may arise in connection with the claims advanced against RTC Properties, Inc. in the civil action styled *HDI Gerling Industrie Versicherung AG, et al., v. Continental Terminals, Inc. and RTC Properties, Inc*., U.S.D.C. D.N.J. Civ. No. 2:14-cv-02571-CCC-MF;

(c)     Judgment in favor of Zurich American Insurance Company and against Pacific Indemnity Company for all legal fees, costs, and expenses incurred by Zurich American Insurance Company in this action as a result of Pacific Indemnity Company's wrongful refusal to defend RTC Properties, Inc. in the civil action styled *HDI Gerling Industrie Versicherung AG, et al., v. Continental Terminals, Inc. and RTC Properties, Inc*., U.S.D.C. D.N.J. Civ. No. 2:14-cv-02571-CCC-MF pursuant to R. 4:42-9(a)(6);

(d)     An order and/or judgment for such other or alternative relief consistent with the claims and causes asserted in this Complaint.

## COUNT II
## DECLARATORY RELIEF AGAINST CHUBB
### (Duty to Indemnify RTC Under Excess Follow-Form Coverage A)

76.     Plaintiffs, Zurich American Insurance Company and Steadfast Insurance Company, incorporate by reference the foregoing allegations of this Complaint as if the same were set forth herein at length.

77.     The Chubb Policy includes two independent insuring agreements, Excess Follow-Form Coverage A, and Umbrella Coverage B.  *See* Chubb Policy at Coverages.

78.     The  Excess Follow-Form Coverage A insuring agreement in the Chubb Policy provides excess insurance coverage with limits of $5 Million, which follows the form of the Pacific Policy:

Excess Follow Form Coverage A

Subject to all of the terms and conditions applicable to Excess Follow-Form Coverage A, we will pay, on behalf of the insured, that part of loss to which this coverage applies, which exceeds the applicable underlying limits.

This coverage applies only if the triggering event that must happen during the policy period of the applicable underlying insurance happens during the policy period of this insurance.

This coverage will follow the terms and conditions of underlying insurance described in the Schedule of Underlying Insurance, unless a term or condition contained in this coverage:

•       differs from any term or condition contained in the applicable underlying insurance; or
•       is not contained in the applicable underlying insurance.

Chubb Policy at Excess Follow Form/Coverage A.

79.     The Pacific Policy is the scheduled underlying commercial general liability insurance referenced in the Excess Follow-Form Coverage A insuring agreement of the Chubb Policy. *See* Chubb Policy at Schedule of Underlying Insurance.

80.     The insurance coverage available to RTC under the Excess Follow-Form Coverage A coverage part of the Chubb Policy is governed by the terms and provisions of the Pacific Policy, including the endorsements thereto.

81.     Those persons qualifying an "insureds" under the Pacific Policy qualify as "insureds" under the Excess Follow-Form Coverage A insuring agreement of the Chubb Policy. Chubb Policy at Who Is An Insured/Excess Follow-Form Coverage A.

82.     The same primary and non-contributing insurance coverage available to RTC under the Pacific Policy is available to RTC under the Excess Follow-Form Coverage A insuring

agreement of the Chubb Policy, once the Pacific Policy is properly exhausted by the payment of a judgment or settlement on RTC's behalf in the Underlying Litigation.

83.    Thus, for the same reasons RTC is entitled to coverage under the Pacific Policy, it is entitled to excess coverage under Excess Follow-Form Coverage A of the Chubb Policy.

84.    Chubb denied coverage to RTC in the Underlying Litigation under Excess Follow-Form Coverage A of the Chubb Policy for the same wrongful and improper reason it denied coverage under the Pacific Policy.  *See* October 14, 2014 Disclaimer.

85.    Chubb asserted no other grounds for its disclaimer of coverage under Excess Follow-Form Coverage A of the Chubb Policy and has waived or is otherwise estopped from doing so now.

86.    For the same reasons coverage for RTC in the Underlying Litigation is not excluded under the Pacific Policy, coverage for RTC in the Underlying Litigation under Excess Follow Form Coverage A of the Chubb Policy is not excluded.

87.    Chubb's disclaimer under Excess Follow Form Coverage A of the Chubb Policy is wrongful, improper, and without basis.

88.    Chubb has an obligation to indemnify RTC against any adverse judgment or settlement in the Underlying Litigation, following the exhaustion of the limits of the Pacific Policy, and without regard to any other insurance which may be available to RTC, including the Zurich Policy and the Steadfast Policy.

89.    There exists a substantial, *bona fide*, actual and justiciable dispute regarding the application and interpretation of the Chubb Policy and Chubb's follow form excess insuring obligations

in favor of RTC thereunder.  There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

**WHEREFORE,** Zurich American Insurance Company and Steadfast Insurance Company respectfully request that this Honorable Court enter:

(a)  An Order declaring that Chubb Insurance Company of New Jersey is obligated to indemnify RTC Properties, Inc. in the civil action styled *HDI Gerling Industrie Versicherung AG, et al., v. Continental Terminals, Inc. and RTC Properties, Inc.*, U.S.D.C. D.N.J. Civ. No. 2:14-cv-02571-CCC-MF on a primary and non-contributing basis under Chubb Insurance Company of New Jersey Excess and Umbrella Insurance Policy 7986-62-21, following the exhaustion of all available limits under Pacific Indemnity Company Policy No. 3586-56-44 WBO;

(b)  An Order declaring that the insurance coverage available to RTC Properties, Inc. under Zurich American Insurance Company Policy No. GLO 9319613-00 and Steadfast Insurance Company Policy No. SEO 4892140-01 is excess to and non-contributing with the excess follow form indemnity coverage available to RTC Properties, Inc. under Chubb Insurance Company of New Jersey Excess and Umbrella Insurance Policy 7986-62-21 as regards to any indemnification obligation which may arise in connection with the claims advanced against RTC Properties, Inc. in the civil action styled *HDI Gerling Industrie Versicherung AG, et al., v. Continental Terminals, Inc. and RTC Properties, Inc.*, U.S.D.C. D.N.J. Civ. No. 2:14-cv-02571-CCC-MF; and

(c)  An order and/or judgment for such other or alternative relief consistent with the claims and causes asserted in this Complaint.

### COUNT III
### DECLARATORY RELIEF AGAINST CHUBB
**(Duty to Defend and Potentially Indemnify RTC in the Underlying Litigation)**

90.  Plaintiffs, Zurich American Insurance Company and Steadfast Insurance Company, incorporate by reference the foregoing allegations of this Complaint as if the same were set forth herein at length.

91.  In the alternative, to the extent Chubb can establish that coverage for RTC in the Underlying Litigation is excluded under the Pacific Policy and the Excess Follow-Form Coverage A

coverage part of the Chubb Policy, coverage would be available to RTC in the Underlying Litigation under Umbrella Coverage B of the Chubb Policy.

92.     The Umbrella Coverage B insuring agreement of the Chubb Policy affords a defense and indemnity to a qualifying insured for a loss because of property damage caused by an occurrence:

UMBRELLA COVERAGE B
BODILY INJURY AND PROPERTY DAMAGE LIABILITY COVERAGE

Subject to all of the terms and conditions applicable to Umbrella Coverage B, we will pay, on behalf of the **insured**, **loss** by reason of liability:

- •      imposed by law; or
- •      assumed in an **insured contract**;

for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.  This coverage applies only to such **bodily injury** or **property damage** that occurs during the policy period.
...

INVESTIGATION, DEFENSE AND SETTLEMENTS

Subject to all of the terms and conditions of this insurance, we will have the right and duty to defend the **insured**:

- •      under Excess Follow-Form Coverage A, against a **suit** in connection with **loss** to which such coverage applies, if the applicable **underlying limits** have been exhausted by payment of judgments, settlements or related costs or expenses (if such costs or expenses reduce such limits); or

- •      under Umbrella Coverage B, against a **suit** to which such coverage applies, even if such **suit** is false, fraudulent or groundless.

We have no duty to defend any person or organization against any claim or **suit**:

- •      to which this insurance does not apply; or
- •      if any other insurer has a duty to defend.

When we have the duty to defend, we may, at our discretion, investigate any occurrence or offense and settle any claim or **suit**.  In all other cases, we may, at our

discretion, participate in the investigation, defense and settlement of any occurrence, offense, claim or **suit**.  Our duty to defend any person or organization ends when we have used up the applicable Limit Of Insurance.

Chubb Policy at Umbrella Coverage B – Bodily Injury And Property Damage Liability

Coverage and at Investigation, Defense And Settlements.

93.   The term "insured" as referenced in the Umbrella Coverage B insuring agreement of the

Chubb Policy is defined for purposes of that coverage to include lessors, such as RTC, where

required by contract:

WHO IS AN INSURED/UMBRELLA COVERAGE B
...
Persons or organizations from whom you lease premises are insureds; but they are insureds only with respect to the ownership, maintenance or use of that particular part of such leased premises leased to you and only if you are contractually obligated to provide them with such insurance as is afforded by this contract.

However, no such person or organization is an insured with respect to any:

•     damages arising out of their sole negligence;
•     occurrence that occurs, or offense that is committed, after you cease to be a tenant in the premises; or
•     structural alteration, new construction or demolition operations performed by or on behalf of them.

*Id.* at Who Is An Insured/Umbrella Coverage B.

94.   The Building 49 Lease Agreement and the Building 54 Lease Agreement explicitly require

liability insurance with limits of no less than $3,000,000 naming RTC as an additional

insured.

95.   RTC is not alleged to be solely liable for the property damage at issue in the Underlying

Litigation.

96.   Continental was a tenant at the time of the alleged loss at issue in the Underlying Litigation.

97.     RTC plainly qualifies as an additional insured under the Umbrella Coverage B insuring agreement of the Chubb Policy.

98.     The remaining relevant highlighted terms within the Umbrella Coverage B insuring agreement of the Chubb Policy are defined, in relevant part, as follows:

**"Loss"**:

- means damages that the insured becomes legally obligated to pay because of injury or damage.
- does not include sums properly deducted for recoveries or salvage.

**"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**"Property damage"** means:

- Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

- Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
  ...

**"Suit"** means a civil proceeding in which damages, to which this insurance applies, are sought.

**"Insured contract"** means an oral or written contract or agreement pertaining to your business, in which you assume the tort liability of another person or organization to pay damages, to which this insurance applies, sustained by a third person or organization, provided the injury or damage occurs, or is caused by an offense that is first committed, after the execution of such contract or agreement.

*Id.* at Definitions/Umbrella Coverage B and Policy Definitions

99.     The claims advanced against RTC in the Underlying Litigation directly address a "loss" because of "property damage" caused by an "occurrence," as those terms are defined under the Chubb Policy, which took place during the effective dates of the Chubb Policy.

100.    Continental assumed RTC's tort liability in an "insured contract," as that term is defined under the Chubb Policy.

101.    Thus, if coverage is not available to RTC under the under the Excess Follow Form Coverage A insuring agreement of the Chubb Policy, defense and indemnity coverage would be available to RTC under the Umbrella Coverage B insuring agreement of the Chubb Policy.

102.    Chubb has nonetheless wrongfully attempted to disclaim coverage under the Umbrella Coverage B insuring agreement of the Chubb Policy by relying on a care, control or custody endorsement appended to the Chubb Policy which reads:

CARE, CONTROL OR CUSTODY

Under Policy Exclusions, the following exclusion is added:

This insurance does not apply to property damage to property described below, if the property is in the care, control or custody of the insured.

Description of Property:
REAL & PERSONAL PROPERTY

All other terms and conditions remain unchanged

Chubb Policy at Care, Control or Custody Endorsement (Form 07-02-0837 (Rev. 7/01)).

103.    The Care, Control or Custody Endorsement purports to supplement the "policy exclusions" without specifying whether the same supplements the policy exclusions applicable to the Excess Follow-Form Coverage A coverage part or the Umbrella Coverage B coverage part, which are clearly delineated as distinct from one another in the Chubb Policy.

-32-

104. The Care, Control or Custody Endorsement does not apply to Umbrella Coverage B.

105. Even assuming *arguendo* Chubb could somehow establish that Care, Control or Custody Endorsement applies to Umbrella Coverage B, the purported exclusion only applies to property in the care, control or custody of "the insured."

106. The  Separation of Insureds clause in the Chubb Policy, reads:

SEPARATION OF INSUREDS

Except with respect to the Limits Of Insurance, and any rights or duties specifically assigned in this insurance to the first named insured, this insurance applies:

- as if each named insured were the only named insured; and
- separately to each insured against whom claim is made or suit is brought.

Chubb Policy at Separation Of Insureds.

107. The purported exclusion, to the extent applicable to Umbrella Coverage B, only excludes property damage in the care, control or custody of the insured seeking coverage.

108. The property at issue in the Underlying Litigation, the coffee and cocoa beans, was not in the care, custody or control of RTC.

109. *A fortiori* the purported Care, Control or Custody exclusion, to the extent applicable to Umbrella Coverage B, does <u>not</u> apply to defeat Chubb's insuring obligations to RTC in the Underlying Litigation under the Umbrella Coverage B insuring agreement of the Chubb Policy.

110. Chubb's disclaimer is wrongful, improper, and without basis.

111. Chubb asserted no other grounds for its disclaimer of coverage under Umbrella Coverage B of the Chubb Policy, and has waived or is otherwise estopped from doing so now.

-33-

112.  Chubb has a duty to defend RTC in the Underlying Litigation, and potentially indemnity RTC with respect to any adverse judgment or settlement of the Underlying Litigation on a primary and non-contributing basis under the Umbrella Coverage B insuring agreement of the Chubb Policy.

113.  In the event Excess Follow-Form Coverage A of the Chubb Policy does not apply to the Underlying Litigation, all conditions precedent for the trigger of a primary and non-contributing defense obligation in favor of RTC under the Umbrella Coverage B insuring agreement of the Chubb Policy have been satisfied and/or waived by Chubb.

114.  In the event the Pacific Policy and Excess Follow-Form Coverage A of the Chubb Policy does not apply to the Underlying Litigation, Chubb's has unlawfully failed to assume the defense of RTC in the Underlying Litigation as required under the Umbrella Coverage B insuring agreement of the Chubb Policy.  As a result, Zurich has been compelled to drop down from its excess position and provide a defense to RTC in the Underlying Litigation.

115.  There exists a substantial, *bona fide*, actual and justiciable dispute regarding the application and interpretation of the Chubb Policy and Chubb's umbrella defense and indemnity obligations in favor of RTC thereunder.  There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

**WHEREFORE,** Zurich American Insurance Company and Steadfast Insurance Company respectfully request that this Honorable Court enter:

(a)  An Order in the alternative declaring that Chubb Insurance Company of New Jersey is obligated to defend RTC Properties, Inc. in the civil action styled *HDI Gerling Industrie Versicherung AG, et al., v. Continental Terminals, Inc. and RTC Properties, Inc.*, U.S.D.C. D.N.J. Civ. No. 2:14-cv-02571-CCC-MF under Chubb Insurance Company of New Jersey Excess and Umbrella Insurance Policy 7986-62-21 on a primary and non-contributing basis;

(b)     An Order declaring that the insurance coverage available to RTC Properties, Inc. under Zurich American Insurance Company Policy No. GLO 9319613-00 and Steadfast Insurance Company Policy No. SEO 4892140-01is excess to and non-contributing with the coverage afforded RTC Properties, Inc, under Chubb Insurance Company of New Jersey Excess and Umbrella Insurance Policy 7986-62-21, as regards to any further defense or indemnification obligation which may arise in connection with the claims advanced against RTC Properties, Inc. in the civil action styled *HDI Gerling Industrie Versicherung AG, et al., v. Continental Terminals, Inc. and RTC Properties, Inc*., U.S.D.C. D.N.J. Civ. No. 2:14-cv-02571-CCC-MF;

(c)     Judgment in the alternative in favor of Zurich American Insurance Company and against Chubb Insurance Company of New Jersey for all legal fees, costs, and expenses incurred by Zurich American Insurance Company in this action as a result of Chubb Insurance Company of New Jersey's wrongful refusal to defend RTC Properties, Inc. in the civil action styled *HDI Gerling Industrie Versicherung AG, et al., v. Continental Terminals, Inc. and RTC Properties, Inc*., U.S.D.C. D.N.J. Civ. No. 2:14-cv-02571-CCC-MF pursuant to R. 4:42-9(a)(6);

(d)     An order and/or judgment for such other or alternative relief consistent with the claims and causes asserted in this Complaint.

**COUNT IV**
**BREACH OF CONTRACT, CIVIL DAMAGES AND DECLARATORY RELIEF AGAINST PACIFIC OR CHUBB**
**(Recovery of Defense Costs Incurred on Behalf of RTC)**

116.   Plaintiffs, Zurich American Insurance Company and Steadfast Insurance Company, incorporate by reference the foregoing allegations of this Complaint as if the same were set forth herein at length.

117.   For the reasons explained *supra*, Pacific has a duty to defend and potentially indemnify RTC in the Underlying Litigation under the Pacific Policy, and Chubb has an excess follow form indemnity obligation in favor of RTC in the Underlying Litigation in the event the Pacific Policy's limits are properly exhausted.

118.   In the event it is determined that Pacific does not have a duty to defend and potentially indemnify RTC in the Underlying Litigation under the Pacific Policy (and Chubb has no

corresponding duty to indemnify under the Excess Follow-Form Coverage A coverage part of the Chubb Policy), then and in that event, and for the reasons addressed *supra*, Chubb has a primary and non-contributing duty to defend and potentially indemnify RTC in the Underlying Litigation under the Umbrella Coverage B coverage part of he Chubb Policy.

119. Either Pacific or Chubb has breached the material terms of their respective insuring agreements with RTC by failing to defend RTC in the Underlying Litigation.

120. The breach of contract by Pacific or Chubb is material and without justification.

121. The Zurich Policy provides coverage excess to the Pacific Policy and the Umbrella Coverage B coverage part of the Chubb Policy relative to the claims advanced against RTC in the Underlying Litigation.

122. The Steadfast Policy provides coverage in excess to the Pacific Policy, the Chubb Policy, and the Zurich Policy.

123. Despite timely tenders to Pacific and Chubb, Zurich has been compelled to drop down and afford a defense to RTC in the Underlying Litigation under reservation of rights.

124. Zurich continues to provide a defense to RTC in the Underlying Litigation under reservation of rights.

125. Zurich has expended and continues to expend significant amounts of money to defend RTC in the Underlying Litigation, all of which should have been borne by Pacific or Chubb.

126. To the extent it has expended and continues to expend significant amounts of money to defend RTC in the Underlying Litigation, Zurich is a legal and/or equitable subrogee of RTC.

127.    In the alternative, Zurich has a direct cause of action against Pacific or Chubb under the

doctrine of equitable contribution, pursuant to the "other insurance" provisions of the

respective policies, and/or under *Potomac Ins. Co. of Illinois ex rel. One Beacon Ins. Co. v.*

*Pennsylvania Mfrs.' Ass'n Ins. Co.*, 215 N.J. 409 (2013).

128.    Pacific or Chubb is obligated to reimburse Zurich for all defense costs and expenses incurred

by Zurich on behalf of RTC in the Underlying Litigation.

**WHEREFORE,** Zurich American Insurance Company and Steadfast Insurance Company

respectfully request that this Honorable Court enter:

(a)    An Order declaring that Pacific Indemnity Company or Chubb Insurance Company of New
Jersey is obligated to reimburse Zurich American Insurance Company for all legal fees,
costs, and expenses incurred by Zurich American Insurance Company in the defense of RTC
Properties, Inc. in the civil action styled *HDI Gerling Industrie Versicherung AG, et al., v.
Continental Terminals, Inc. and RTC Properties, Inc.*, U.S.D.C. D.N.J. Civ. No. 2:14-cv-
02571-CCC-MF;

(b)    Judgment in favor of Zurich American Insurance Company and against Pacific Indemnity
Company or Chubb Insurance Company of New Jersey for all legal fees, costs, and expenses
incurred by Zurich American Insurance Company in the defense of  RTC Properties, Inc. in
the civil action styled *HDI Gerling Industrie Versicherung AG, et al., v. Continental
Terminals, Inc. and RTC Properties, Inc.*, U.S.D.C. D.N.J. Civ. No.2:14-cv-02571-CCC-MF,
plus interest thereupon;

(c)    Judgment in favor of Zurich American Insurance Company and against Pacific Indemnity
Company or Chubb Insurance Company of New Jersey for all consequential damages,
inclusive of legal fees costs and expenses incurred by Zurich American Insurance Company
in this action, caused by Pacific Indemnity Company's or Chubb Insurance Company of New
Jersey's breach of contract and wrongful refusal to defend RTC Properties, Inc. in the civil
action styled *HDI Gerling Industrie Versicherung AG, et al., v. Continental Terminals, Inc.
and RTC Properties, Inc.*, U.S.D.C. D.N.J. Civ. No. 2:14-cv-02571-CCC-MF;

(d)    Judgment in favor of Zurich American Insurance Company and against Pacific Indemnity
Company or Chubb Insurance Company of New Jersey for all legal fees, costs, and expenses
incurred by Zurich American Insurance Company in this action as a result of Pacific
Indemnity Company's or Chubb Insurance Company of New Jersey's wrongful refusal to
defend against  RTC Properties, Inc. in the civil action styled *HDI Gerling Industrie*

*Versicherung AG, et al., v. Continental Terminals, Inc. and RTC Properties, Inc.*, U.S.D.C. D.N.J. Civ. No. 2:14-cv-02571-CCC-MF pursuant to <u>R</u>. 4:42-9(a)(6); and

(e)     An order and/or judgment for such other or alternative relief consistent with the claims and causes asserted in this Complaint.

Respectfully Submitted,

By: /s/ Louis A. Bové
LOUIS A. BOVÉ, ESQUIRE
BODELL BOVE, LLC
1845 WALNUT STREET, 11TH FLOOR
SUITE 1100
PHILADELPHIA, PA 19103
TEL: (215) 864-6600
FACSIMILE: (215) 864-6610
lbove@bodellbove.com
*Attorneys for Plaintiffs,*
*Zurich American Insurance Company*
*and Steadfast Insurance Company*

Date: February 16, 2016